UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FIRST MERCURY INSURANCE CO.,

      Plaintiff/Counter-Defendant,

                                    Case No. 09-14918

v.                                       Hon. Lawrence P. Zatkoff

CHRISTOPHER K CORP. and
CHRISTOPHER K HOLDINGS, LLC,

      Defendants/Counter-Plaintiffs/Cross-Plaintiffs/Cross-Defendants,

and

SENECA INSURANCE COMPANY,

      Defendant/Counter-Plaintiff/Cross-Plaintiff/Cross-Defendant.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on August __, 2011.

PRESENT:  THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on the parties' following motions:

      (1) Plaintiff/Counter-Defendant First Mercury Insurance Co.'s ("First Mercury") amended motion for summary judgment against Defendant/Counter-Plaintiff/Cross-Plaintiff/Cross-Defendant Seneca Specialty Insurance Company ("Seneca") [dkt 43];

      (2) Defendants/Counter-Plaintiffs/Cross-Plaintiffs/Cross-Defendants Christopher K. Corporation ("CK Corporation") and Christopher K. Holdings, LLC's ("CK Holdings"), (collectively "Christopher K"), motion for summary judgment [dkt 44];

      (3) Seneca's motion for summary judgment against Christopher K

[dkt 45];

(4) Seneca's motion for summary judgment against First Mercury [dkt 46]; and

(5) Seneca's motion to strike or, alternatively, motion for leave to file sur-reply to First Mercury's reply including new evidence/affidavits and brief in support ("motion to strike")[dkt. 58].

The parties have fully briefed the motions for summary judgment. No response has been filed with respect to Seneca's motion to strike and the time period to do so has elapsed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. Each motion is addressed in turn.

## II. BACKGROUND

On December 18, 2008, a fire occurred at a building that housed Nino's Market ("Nino's"), a grocery store located at 15901 East Warren Avenue, Detroit, Michigan. The fire caused some damage to the building itself and the business personal property located within. After the fire, the building was purportedly able to be repaired. On December 20, 2008, a theft occurred of the business personal property. On February 2, 2009, during the investigation of the initial fire and theft, the building and the remaining personal property were destroyed by a second fire.

CK Corporation operated Nino's and leased the building from CK Holdings, the owner of the building. Christopher Karim is the sole officer and shareholder of CK Corporation and the sole member of CK Holdings (collectively "Christopher K"). Christopher Karim's father, Maroom Karim, managed Nino's. At the time of the December 18, 2008, fire, the building and business were undisputedly insured by two insurance policies—one with Seneca and one with First Mercury.

2

Seneca had issued a replacement cost policy, effective December 14, 2006, insuring losses caused by fire but not losses caused by theft. First Mercury had issued an actual cash value policy, effective December 16, 2008 (two-days prior to the fire), insuring losses caused by fire and theft. Seneca's policy was canceled for non-payment of the premium, effective January 8, 2009. The parties do not dispute that only First Mercury's insurance policy was in effect at the time of the second fire, and that Seneca's policy excluded coverage of the December 20, 2008, theft. Only liability for the December 18, 2008, fire is at issue.

Both insurance policies contain provisions governing this situation, where two insurers may be liable for the loss. In the instant insurance policies, these provisions are contained in sections, entitled "Other Insurance." Relevant to the instant motions before the Court, First Mercury's policy provides:

> 10. Other Insurance.
>
> If *other valid and collectible insurance* is available to any insured for a loss we cover under the policy, our obligations are limited as follows:
>
> a. Excess Insurance
>
> This insurance is excess over any other insurance whether primary, excess, contingent, self-insurance or on any other basis.
>
> When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:
>
> (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
>
> (2) The total of all deductible and self-insured amounts under any other insurance.
>
> We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not

3

bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Policy.

b. Method of Sharing

If a court of competent jurisdiction finds that this insurance is not excess over any of the other insurance, then we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable Limits of Insurance to the total applicable Limits of Insurance of all insurers.

(emphasis added).  As the emphasized section states, First Mercury's section requires "other valid and collectible insurance" before First Mercury's policy coverage is limited.

With respect to Seneca's policy, it places the following relevant duties on the insured in the event of a loss:

### E. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

* * *

### 3. Duties In The Event Of Loss Or Damage

a. You must see that the following are done in the event of loss or damage to Covered Property:

* * *

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage . . .

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of

4

loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

* * *

(8) Cooperate with us in the investigation or settlement of the claim.

(emphasis in original).

On the day of the first fire, December 18, 2008, Christopher K made a claim with First Mercury.  Following the loss, First Mercury retained the services of GAB Robbins NA, an independent adjusting company, to represent it with respect to the claim.[1]  GAB Robbins NA initially assigned Jeff Toslot to handle the claim, but, later reassigned the case to Wallace Petrowski. First Mercury also hired a cause-and-origin investigator to determine the cause of the fire.  James Maxwell, a certified fire investigator for EFI Global, Inc., conducted an investigation and concluded that the building was fire bombed.  Christopher K retained the services of Globe Midwest Adjusters International ("Globe Midwest"), a public adjusting company, to present Christopher K's claim to First Mercury.  Globe Midwest assigned Howard Mishne to the claim.  Petrowski and Mishne met at the store on December 31, 2008.  Petrowski contacted Belfor USA, a construction firm, to provide an estimate for the repair of the store.  On behalf of Belfor USA, James Peldo inspected Nino's near the end of December 2008 or the beginning of January 2009.  Peldo then prepared a written estimate

_____

[1]An independent adjuster is a claims adjuster who works for an insurance company, as opposed to a public adjuster who works for a policy holder in appraising and negotiating an insurance claim.

5

of the cost to repair the structure.  Before Christopher K or First Mercury were aware of the fact that Seneca's policy would cover the December 18, 2008, fire, First Mercury and Christopher K agreed that Christopher K's losses were in the amount of $781,982.

With respect to Seneca, prior to the December 18, 2008, fire, Seneca hired Chylstek & White Services ("Chylstek & White") to conduct a general liability audit of Nino's Market.  Tim Kuiper, an auditor for Chylstek & White, prepared an audit report, which indicates that on December 22, 2008, he telephoned Christopher K and discovered there was a fire at the store and no one was there.  Kuiper made several other attempts to contact the manager of Nino's, resulting in him leaving telephone messages.  On or about January 6, 2009, Kuiper communicated this information to Classic Insurance Services ("Classic"), the insurance company that sold Seneca's policy.  On January 13, 2009, the audit report indicates that Kuiper closed the audit due to a lack of cooperation by the insured.  In March of 2009, Christopher K discovered that Seneca's policy was in force at the time of the December 18, 2008, fire, and Maroom Karim relayed that information to Classic.  Classic transmitted the notice of the claim to Seneca.

On May 5, 2009, Seneca received a notice of the claim for the December 18, 2008, fire from Christopher K.  Seneca then hired ASU, an independent adjusting company, which assigned Dan Rollison to investigate the claim.  Rollison had familiarity with the property because in October of 2008, he investigated a separate claim regarding Nino's.  Eventually, Seneca denied Christopher K's claim by letter, dated February 1, 2010, stating, among other reasons, that the notice of the claim was late and that Seneca was "unable to perform inspections of the property in the condition it was in immediately after the December 18, 2008, fire."

Procedurally, First Mercury filed the present action seeking, in Count I, a judicial declaration

6

that it was liable for only a pro rata share of the loss as both First Mercury and Seneca covered the property under their respective policies.  In Count II, First Mercury seeks reformation of Seneca's insurance policy based on the parties' intent that Nino's be adequately covered by both insurance policies.  Each party has filed a motion for summary judgment.  First Mercury has admitted liability for Christopher K's loss caused by the first fire and has paid its purported share of the agreed $781,982 in losses (*i.e.*, $388,153.27) to Christopher K.

First Mercury essentially argues that Seneca is liable for the remaining share of the loss caused by the December 18, 2008, fire.  Christopher K concurs with First Mercury that Seneca is also liable, but asserts, alternatively, that if Seneca is found not liable then there is no genuine dispute that First Mercury is liable for the entire amount of loss.  Seneca admits that its policy was in effect at the time of the loss and that its policy provides for fire coverage.  Seneca essentially contends, however, that there is no genuine dispute that it is not liable for the losses caused by the December 18, 2008, fire because it did not receive prompt notice of a claim for fire loss and was prejudiced due to such untimely notice.

### III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or;

7

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex*, 477 U.S. at 323. The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

### A.    CROSS-MOTIONS FOR SUMMARY JUDGMENT: FIRST MERCURY AND CHRISTOPHER K VS. SENECA

As an initial matter, the Court notes that the parties do not dispute that First Mercury's insurance policy includes an "Other Insurance" provision, and for First Mercury to collect from Seneca, Seneca's policy must satisfy the "other valid and collectible insurance" phrase in First

Mercury's policy.  The dispute centers on whether Seneca's policy is "other valid and collectible insurance."  Seneca contends that Christopher K failed to follow the contractual provisions in Seneca's policy, and, therefore, it is not liable for any losses to Christopher K or First Mercury. Specifically, Seneca contends that the notice of loss received from Christopher K on May 5, 2009, failed to provid "prompt notice" of the loss or damage as required in Subsection E.3 of its policy, entitled, "Duties In The Event Of Loss Or Damage."  Because Seneca is not required to provide coverage, Seneca further contends that First Mercury's claims fail because Seneca's policy is not "other valid and collectible insurance" as required by First Mercury's policy.

First Mercury argues that Seneca is required to pay its proportionate share of the damages caused by the December 18, 2008, fire because there is no genuine dispute of material fact that: (1) Seneca had received timely notice of the loss through Kuiper on December 22, 2008, or through Classic in January of 2009; (2) Seneca did not suffer material prejudice related to the date it received the May 5, 2009, notice of loss; and (3) Seneca's policy provides for it to pay a proportionate share of the coverage.[2]

### i.  Timely Notice through Auditor or Insurance Agency

Generally, an independent insurance agent is an agent of the insured.  *Mate v. Wolverine Mut. Ins. Co.*, 233 Mich. App. 14, 20 (Mich. Ct. App. 1998) (citing *Harwood v. Auto-Owners Ins. Co*, 211 Mich. App. 249, 254 (1995)(citation omitted)).  Notice of loss to an independent agent does

---

[2]Christopher K raises arguments that are similar to First Mercury with respect to: (1) Seneca receiving notice of the December 18, 2008, fire through Kuiper and/or Classic; and (2) Seneca was not materially prejudiced from receiving the notice of loss on May 5, 2009.  Any additional evidence or arguments raised by Christopher K will be reviewed when addressing First Mercury's arguments. As such, the Court will combine First Mercury and Christopher K's motions for summary judgment with respect to these similar arguments.

not constitute notice of loss to the insurance carrier. *West Bay Exploration Co. v. AIG Specialty Agencies, Inc.*, 915 F.2d 1030, 1035 (6th Cir. 1990). Notice of loss to an *authorized* insurance agent of the insurer as to a matter *within* the scope of his authority is chargeable to an insurer. *Wendel v. Swanberg*, 384 Mich. 468, 479 & n.7 (1971) (citing *Hawkeye Cas. Co. v. Holcomb,* 302 Mich. 591 (1942)).

The same rule applies to other agents, where the agent acquires knowledge within the scope of the agent's authority and that knowledge is imputed to a principal:

> When a person representing a corporation is doing a thing which is in connection with and pertinent to that part of the corporation business which he is employed, or authorized or selected to do, then that which is learned or done by that person pursuant thereto is in the knowledge of the corporation. The knowledge possessed by a corporation about a particular thing is the sum total of all the knowledge which its officers and agents, who are authorized and charged with the doing of the particular thing[,] [acquire] while acting under and within the scope of their authority.

*New Props., Inc. v. George D. Newpower, Jr., Inc.*, 282 Mich. App. 120, 134 (2009) (citing *Upjohn Co. v. New Hampshire Ins. Co.*, 438 Mich. 197, 214 (1991) (edits in original)).

First Mercury and Seneca do not dispute that Seneca's policy required prompt notice from Christopher K. First Mercury, however, argues that Seneca should be imputed with the knowledge of its purported agents—Kuiper and Classic. In that regard, First Mercury argues that Seneca would have received notice of the fire on or about December 22, 2008, or, at a minimum, on January 6, 2009, when Kuiper contacted Classic for assistance in investigating Nino's.

Seneca refutes First Mercury's argument. Seneca argues that Kuiper was not authorized to receive notice of losses on behalf of Seneca, and therefore, Kuiper's knowledge may not be imputed to Seneca. Seneca also contends that under Michigan law, Classic is not an agent of Seneca, but

10

rather an agent of Christopher K, and thus, Classic's knowledge also may not be imputed to Seneca.

The Court finds that First Mercury and Christopher K have failed to provide sufficient evidence that Kuiper's knowledge of the December 22, 2008, fire may be imputed to Seneca or that Classic is an authorized insurance agent of Seneca. With respect to Kuiper, First Mercury relies on a progress report that indicates that Kuiper learned of the fire on December 22, 2008. First Mercury, however, fails to submit sufficient evidence that the knowledge of the fire is within the scope of Kuiper's authority. Kuiper prepared the progress report in response to an Audit Order Request from Seneca. The Audit Order Request prepared by Seneca and sent to Chylstek & White requested an underwriting audit to estimate the exposure of liability under the general liability provisions of the policy. The Audit Order Request does not indicate that Kuiper was authorized or selected to receive notice of insurance claims on behalf of Seneca or investigate any claim losses, particularly any losses that may have occurred at Nino's. Kuiper's progress report does note that Nino's sustained fire loss, but nothing indicates that a claim regarding the loss was going to be made to Seneca. Christopher Karim even testified during his deposition that he did not provide notice to Seneca on December 18, 2008, because he did not believe he still had coverage with Seneca. Because Seneca can only be imputed with the knowledge for which Kuiper received during the scope of his authority (*i.e.*, assess the general liability exposure under the policy), such knowledge to Kuiper regarding the December 18, 2008, fire is not imputed to Seneca.

Furthermore, a review of the record indicates that Classic was an independent insurance agent, and thus under Michigan law, an agent of Christopher K. *See Wendel*, 384 Mich. at 479; *West Bay*, 915 F.2d at 1035–36. First Mercury provides no evidence to justify a contrary conclusion. The Court also acknowledges Christopher K's argument that sufficient notice may be given to Seneca's

11

"authorized agent," (purportedly Classic), and it need not be transmitted directly to Seneca. The Court, however, declines to find that Classic was such an "authorized agent" listed on Seneca's policy. The portions of Seneca's policy relied upon by Christopher K fail to support its assertion. Two of the pages list Classic under a heading entitled "Producer Name." No evidence has been submitted to the Court to establish that "Producer Name" is where Seneca lists its authorized agent. And, despite Christopher K's assertion that there is no mention of a wholesale broker named "Iroquois of New England," under the title "Producer Name," Classic's business name and address is followed by the letters "IRQ-GL." Evening assuming that the information listed under "Producer Name" identified the "authorized agent" of Seneca, Christopher K fails to explain whether "IRQ-GL" represents the wholesale broker "Iroquois of New England" and the actual "authorized agent."[3] Moreover, the third page cited to by Christopher K is a page representing the installment payment plan schedule. Rather then indicate Classic as the agent of Seneca, the document supports the finding that Classic is the agent of Christopher K. The page states the named insured is "DBA NINO'S MARKET." The next line, states "Agent: CLASSIC INS SERVICES INC." Thus, the knowledge of Kuiper is not imputed to Seneca, and Classic is not an authorized agent of Seneca.

### ii. Material Prejudice due to May 5, 2009, Notice of Loss

A prompt notice provision in an insurance policy is common. *Wendel*, 384 Mich. at 477. It allows the insurer to make a timely investigation, to evaluate the claim, and to defend against fraudulent claims. *Id.* (citing *Wehner v. Foster*, 331 Mich. 113 (1951)). The insured's delay in

---

[3]Greg Crapanzano, Seneca's Assistant Vice-President for Property Claims, testified that Seneca's policy was procured through a broker, Iroquois of New England. According to Crapanzano's testimony, it appears there is no relationship between Seneca and Classic. Both Seneca and Classic deal with Iroquois of New England.

giving the required notice does not cause a forfeiture of the insurance coverage, unless the insurer suffered prejudice from the delay. *Id.* at 478; *West Bay*, 915 F.2d at 1036. Prejudice occurs where the delay "'materially' impairs an insurer's ability to contest its liability to an insured or the liability of the insured to a third party." *West Bay*, 915 F.2d at 1036–37. The burden rests on the insurer to establish prejudice. *Wendel*, 384 Mich. at 478.

Here, it is undisputed that Seneca received a notice of loss on May 5, 2009, approximately five months after the December 18, 2008, fire. First Mercury argues that there is no genuine dispute of material fact that Seneca had sufficient information on May 5, 2009, from which to evaluate Christopher K's claim and make a determination regarding the claim. First Mercury highlights the following reports and documentation of which Seneca has access: (1) Seneca has two separate valuation reports on the party store dated September 21, 2008—a site inspection report and a commercial valuation building report; (2) Seneca's adjuster, Rollison, created a building valuation report related to a vandalism claim, including interior photographs of the store, one month prior to the December 18, 2008, fire; (3) All documents created on behalf of First Mercury and Christopher K, including: (a) Petrowski's adjustment documents, (b) Mishne's adjustment documents, (c) the cause and origin report regarding the fire, (d) photographs taken of Nino's after the fire, and (e) Belfor USA's building repair estimates.

In response, Defendant argues that it was materially prejudiced by Christopher K's delay due to the alteration of the December 18, 2008, fire by the February 2, 2009, fire. Seneca also refutes First Mercury's contention that Seneca had access to sufficient information to conduct an investigation of the claim. Seneca argues that First Mercury's investigation was incomplete and that the total loss was based on a settlement reached between First Mercury and Christopher K.

13

Defendant analogizes this case to *Steelcase, Inc. v. American Motorists Ins. Co.*, No. 89-1344, slip op. (6th Cir. July 3, 1990) [907 F.2d 151 (Table Opinion)] (unpublished per curiam), and *Wehner*, 331 Mich. at 113, where the Sixth Circuit and Michigan Supreme Court concluded that intervening events between the loss and the notice of loss materially prejudiced the insurer.

In *Steelcase*, Steelcase, Inc. had 3,000 gallons of paint solvent leak from an underground tank. Steelcase, Inc. and its insurance broker decided not to contact the insurers because they believed the clean-up costs would be minimal. *Steelcase*, No. 89-1344, slip op. at *1. After several months, Steelcase Inc. proposed a course of action for the clean-up, which was accepted by the governing water board. *Id.* After expending over $936,000 in the clean-up and more than two years after the leak, Steelcase Inc. notified one of its insurers requesting coverage for the costs. *Id.* The insurer denied coverage, followed by the second insurer, whom also denied coverage. *Id.* The insurers' policies each had a clause requiring notice as soon as practicable. *Id.* The Sixth Circuit, affirming the trial court's grant of summary judgment, found that the insurers were materially prejudiced because the insurers: (1) "were deprived of an opportunity to investigate the incident properly"; (2) "were denied the opportunity to participate in Steelcase's remedial efforts"; (3) were unable to appeal the water board's decision regarding the clean-up; and (4) "the delay and the destruction . . . deprived appellees of the opportunity of investigating whether claims against the manufacturers of the pipe or storage tank were available." *Id.* at *2.

The Michigan Supreme Court reached a similar conclusion in *Wehner*. In *Wehner*, the insured allowed seven months to pass after an automobile accident before reporting the accident to the insurer. 331 Mich. at 122. This delay provided no opportunity for the insurer to inspect the damaged automobile or investigate and interview witnesses during that time period. *Id.* The

14

Michigan Supreme Court, in reversing the trial court, found that the insurer had made out a prima facie case that the insurer was prejudiced by the failure of the insured to give notice of the accident as soon as practicable. *Id.*

In this case, the Court denies First Mercury's and Christopher K's request for summary judgment with respect to Seneca establishing material prejudice. Rather, as a matter of law, the Court finds that Seneca was materially prejudiced by the lack of timely notice and grants summary judgment to Seneca on this issue. First, similar to Steelcase, Inc.'s insurers' inability to investigate the leak before clean-up procedures had started, and the inability of the insurer in *Wehner* to investigate the damaged automobile, Seneca was denied the ability to investigate the December 18, 2008, fire, before the February 2, 2009, fire. The briefs and exhibits attached to the parties' motion for summary judgment indicate that the building and business personal property were not a complete loss after the December 18, 2008, fire. However, after the February 2, 2009, fire, the building was no longer repairable, and the remaining business personal property was destroyed completely. As Seneca's policy undisputedly covers only the December 18, 2008, fire, it was deprived of the ability to investigate and contest the extent of its liability to Christopher K and contest its liability to First Mercury. *See Westbay*, 915 F.2d at 1036–37.

Also similar to Steelcase Inc.'s insurers' inability to be involved in the clean-up plan adopted by the water board, Seneca was notified of the loss claim after First Mercury and Christopher K had negotiated and adjusted the loss values. Seneca is prejudiced due to its absence, among other reasons, because First Mercury's policy covered all three losses on an actual cash value basis, as opposed to Seneca's policy, which only provided coverage for the December 18, 2008, fire on a replacement cost basis. Furthermore, First Mercury has failed to indicate that the compromised

settlement of $781,982 does not cover loss and damage from both fires and the theft, of which Seneca is only potentially liable for the first fire.

Second, First Mercury's argument that Seneca had access to sufficient information to assess the loss is unpersuasive. With respect to Seneca's own documents created prior to the fire, assuming they provided sufficient information regarding the replacement value of the building and business personal property, Seneca was unable to investigate the damage caused by the first fire before the second fire and compare such damage to its documents. With respect to First Mercury's documents, First Mercury's interests and Seneca's interests do not align, as First Mercury's policy covers theft, whereas Seneca's policy covered only loss from fire. The record indicates that First Mercury's documents may have been biased by the fact that it would be required to cover the loss of the fire, the theft, and the loss from the second fire. Grailing Brown noted that because First Mercury covered the fire and theft, it did not matter to First Mercury whether loss or damage was caused by fire or theft.[4]

First Mercury also provides no legal authority to the Court that Seneca must rely on reports and documents created on behalf of a second insurer. Even assuming Seneca were required to rely on the reports and documents of First Mercury, the testimony of Mishne, Petrowski, and Peldo all suggest that First Mercury's documents and investigation are incomplete. The testimony indicates that photographs and contemporaneous notes of their investigations are missing. The testimony also indicates a complete investigation of the December 18, 2008, fire had not occurred prior to the February 2, 2009, fire. Peltrowski stated during his deposition that the investigation regarding the

---

[4]Brown is the senior property specialist for ProPoint Claim Services. ProPoint Claim Services was hired by First Mercury as a third-party administrator of First Mercury's claims.

December 18, 2008, fire was not complete before the second fire occurred. Mishne admitted to losing photographs that depicted Nino's on December 18th and 20th of 2008. Statements of Nino's owner, Christopher Karim, and Nino's manager, Marmoon Karim, were taken by Mishne, yet no record was made of the statements. Peltrowski also testified he had missing files and incomplete records. Thus, First Mercury has failed to even show that its documents and its investigation are reliable and complete.

For these reasons, Seneca has been materially prejudiced because it can not contest the proportionate share that First Mercury alleges or contest and investigate the extent of the liability owed to Christopher K. Accordingly, the Court finds that First Mercury and Christopher K are denied summary judgment.

### iii.  Seneca's Policy Requires It to Pay a Proportionate Share

Having determined that Seneca was materially prejudiced by the lack of timely notice, Seneca is not required to provide coverage to Christopher K, as Christopher K has breached the contractual duties of Seneca's policy. *See Wendel*, 384 Mich. at 353 (implying that an unreasonable delay in giving a required notice results in forfeiture of the insurance coverage). Therefore, the Court need not address First Mercury's, Christopher K's, and Seneca's arguments regarding whether Seneca's policy requires it to pay a proportionate share of the losses claimed from the December 18, 2008, fire. First Mercury and Christopher K are denied summary judgment with respect to this issue.

### iv.  Conclusion

For the reasons stated above in Subsection III.A, First Mercury and Christopher K are denied summary judgment because (i) the timely notice of the loss through Kuiper on December 22, 2008,

or through Classic in January of 2009, is not imputed to Seneca; (ii) Seneca suffered actual prejudice with respect to the date it received the May 5, 2009, notice of loss; and (iii) whether Seneca's policy provides for it to pay a proportionate share of the coverage is moot due to Christopher K's breach of the policy's contractual duties with respect to prompt notice.

Because the Court has determined there is no genuine dispute as to whether Seneca incurred material prejudice, the Court grants summary judgment to Seneca on its claims against Christopher K and First Mercury regarding material prejudice.[5]   Christopher K also moves to strike Seneca's affirmative defenses, numbered 8, 11, 15, and 30, which assert defenses for why Seneca is not required to provide coverage.  For the reasons stated, the Court need not address Christopher K's request to strike such defenses and its request is denied as moot.

### B.   CHRISTOPHER K VS. FIRST MERCURY

Christopher K argues that there is no genuine dispute that, if Seneca is not liable, First Mercury must pay the remaining balance owed of its policy coverage limits because Seneca is not "other valid and collectible insurance" according to the Other Insurance portion of First Mercury's policy.  The Court grants summary judgment to Christopher K on this issue, as a reasonable jury could not find that First Mercury does not owe Christopher K the unpaid balance of the loss up to First Mercury's policy limits.  Having already determined that Seneca is not required to provide coverage to Christopher K due to Christopher K's breach of the policy, Seneca is not "other valid and collectible insurance" under First Mercury's policy.  *See Aetna Cas. & Surety Co. v. Buckeye Union Cas. Co.*, 157 Ohio St. 385, 390 (1952) (addressing a similar excess insurance provision using

---

[5]Having granted Seneca summary judgment on this issue, the Court has resolved Seneca's motion for summary judgment against Christopher K [dkt 45] and First Mercury's motion for summary judgment against Seneca [dkt 43].

the phrase "valid and collectible insurance," the court stated "so long as Buckeye disclaimed coverage . . . there was no admitted or established 'other valid and collectible' insurance"). First Mercury has admitted in its Complaint that it will be required to pay the remaining balance to Christopher K if Seneca is excused from providing coverage. First Mercury does not dispute that its policy provided coverage to Christopher K and that such coverage includes the December 18, 2008, fire. As such, Christopher K is granted summary judgment with respect to the fact that First Mercury must pay the remaining balance owed pursuant to the coverage provided in First Mercury's policy, and First Mercury's count for declaratory relief (Count I) is dismissed.

### C.   SENECA VS. FIRST MERCURY AND CHRISTOPHER K

Seneca essentially raises two arguments in its motions for summary judgment: (1) no genuine dispute of material fact exists that Christopher K's breach of the contractual duties in Seneca's policy materially prejudiced Seneca; and (2) no genuine dispute of material fact exists that the parties' intentions were to have Seneca's policy expire before First Mercury's policy began (*i.e.*, no overlapping coverage). With respect to the first argument, the Court has already addressed this argument and granted summary judgment to Seneca on it.[6] The Court will address Seneca's second argument.

A written instrument may be reformed where it fails to express the intentions of the parties due to an accident, inadvertence, mistake, fraud, or inequitable conduct. *Najor v. Wayne lnt'l. Life Ins. Co.*, 23 Mich. App. 260, 272 (1970). The burden is on the party seeking reformation and the evidence "must be convincing and must clearly establish the right to reformation." *Johnson Family*

---

[6]Seneca also raises several alternative arguments regarding the policies' provisions and coverages. However, because the Court has determined Seneca is not required to provide coverage to Christopher K, the Court finds these arguments moot.

*Ltd. P'ship v. White Pine Wireless, LLC*, 281 Mich. App. 364, 371–72 (2008) (citing *Stevenson v. Aalto*, 333 Mich. 582, 589 (1952)).

Seneca's second argument addresses Count II of First Mercury's Complaint, in which First Mercury seeks to reform Seneca's policy to conform with the intent of the parties that Christopher K be covered by both Seneca and First Mercury's policies. First Mercury's concise response fails to meet its burden. First Mercury states, "As a beneficiary of the Seneca "Other Insurance" clause First Mercury is entitled to seek to [sic] the reformation remedy." First Mercury provides insufficient legal authority to support this statement. Nevertheless, most convincing is Christopher Karim's own testimony indicating that he intended the Seneca policy to expire before First Mercury's policy would start, stating that he intended to "stay with Seneca throughout the term of the policy and start First Mercury when that policy—rather than letting it overlap and getting a refund for the difference and this and that." Christopher Karim even answered a question from counsel that it was never his intention to have two insurance policies on the building. As such, no reasonable jury could find that the intention of the parties in executing the insurance policies was to have overlapping coverage. Accordingly, Seneca is granted summary judgment with respect to First Mercury's reformation claim, and First Mercury's count seeking reformation (Count II) is dismissed.

### D. SENECA'S MOTION TO STRIKE OR, ALTERNATIVELY, MOTION FOR LEAVE

Seneca moves to strike or, alternatively, be permitted to file a sur-reply to First Mercury's reply brief [dkt 58] because it contains three new pieces of evidence: (1) an affidavit of Brown; (2) an affidavit of Petrowski; and (3) a web page from Chylstek & White. The Court denies Seneca's relief because the Court did not rely on First Mercury's newly submitted evidence in its holding.

20

As such, Seneca's motion to strike is denied as moot.

## V. CONCLUSION

Accordingly, for the above reasons, IT IS HEREBY ORDERED that First Mercury's amended motion for summary judgment against Seneca [dkt 43] is DENIED;

IT IS FURTHER ORDERED that Christopher K's motion for summary judgment [dkt 44] is GRANTED IN PART and DENIED IN PART;

IT IS FURTHER ORDERED that Seneca's motion for summary judgment against Christopher K [dkt 45] is GRANTED;

IT IS FURTHER ORDERED that Seneca's motion for summary judgment against First Mercury [dkt 46] is GRANTED; and

IT IS FURTHER ORDERED that Seneca's motion to strike or, alternatively, motion for leave to file a sur-reply to First Mercury's reply [dkt 58] is DENIED AS MOOT.

IT IS FURTHER ORDERED that because all claims have been dismissed, this case is now closed.

IT IS SO ORDERED.


S/Lawrence P. Zatkoff                        
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE


Dated:  August 10, 2011

21

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on August 10, 2011.

S/Marie E. Verlinde

-

Case Manager
(810) 984-3290